UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re ) | | Chapter 7 |
| ) | | |
| TANNER FAMILY LLC, ) | | Case No. 05-83622-mhm |
| ) | | |
| Debtor. ) | | Judge Murphy |
| _____) | | |
| ) | | |
| PAUL H. ANDERSON, JR., as Trustee ) | | |
| of TANNER FAMILY LLC, ) | | Adv. Pro. No. 07-6034 |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | | |
| ) | | |
| MIDWEST HOLDING #7, LLC, ) | | |
| ) | | |
| Defendant. ) | | |
| _____) | | |

TRUSTEE'S BRIEF
REPLYING ON HIS MOTION FOR SUMMARY JUDGMENT AND
RESPONDING ON MIDWEST'S CROSS-MOTION FOR SUMMARY JUDGMENT

This is the brief of Paul H. Anderson, Jr., as and only as trustee (the "Trustee") of the estate in the bankruptcy case captioned above, serving two purposes as noted in the title. Each side has filed summary judgment motions. Here are the briefs so far:

1. Trustee's brief supporting his motion for summary judgment, filed on April 4, 2007, at docket no. 10 (the "Trustee's April 4 Brief").

2. Brief of the defendant ("Midwest") filed on April 6, 2007 in two places: at docket no. 11 to oppose the Trustee's summary judgment motion; and at docket no. 12 to support Midwest's summary judgment motion (the "Midwest April 6 Brief").

3.  This brief, through which the Trustee replies to the Midwest April 6 Brief.

**Preliminary Statement**

The question is whether the Termination Fee[1] was paid "for or on account of an antecedent debt owed by the debtor before such transfer was made" under 11 U.S.C. § 547(b)(2). As will matter later, Midwest does not assert that the transfer was made in the ordinary course of business under § 547(c)(2), or for that matter, as a contemporaneous exchange under (c)(1), or for new value under (c)(4).

Midwest asserts this: The Termination Fee was paid in exchange for future rent, i.e., rent that attached to later months. But a debt is not a "debt" until it is "incurred," and a debt for rent is not "incurred" until the period of time for which it is paid. Therefore, the Termination Fee was not "antecedent debt" within § 547(b)(2). Midwest April 6 Brief at p. 5.

We disagree. We first interpret the statute. In short, "debt" is coextensive with "claim,"[2] and "claim" includes rights to payment that are "contingent" and "unmatured." "On account of" means "because of." In plain English, the debtor paid the Termination Fee "because of" Midwest's rights to payment under the Lease – however "unmatured" the remaining payments may have been. The Lease evidenced rights to payment and was signed 32 months earlier. Had the debtor not signed the Lease, the debtor would not have paid the Termination Fee.

---

1.  Operational terms that are undefined here have the definitions assigned in the Trustee's April 4 Brief.

2.  <u>Iowa Premium Service Co., Inc. v. First National Bank</u> (In re Iowa Premium Service Co., Inc.), 695 F.2d 1109, 1111 (8th Cir. 1982), citing the relevant House Report.

We then address Midwest's "incurred" theory. In short, the theory arose to escape the plain – but completely unintended – meaning of former § 547(c)(2)(B) (the "45 day" rule). Congress repealed that provision in 1984, and no court has ever employed that theory, as here, to save from avoidance a transaction that is concededly outside the ordinary course of business.

Before we expand on those points, let us take a reality check. Every day landlords make prepetition claims for rent "incurred" after the petition date, as Midwest uses "incurred." And every day courts allow those claims. How is the landlord's claim for future rent in § 502(b) different from the trustee's "antecedent debt" requirement in § 547(b)(2)?

The answer is that the issues are identical. "Debt" in § 547(b) is coextensive with "claim" in 502(b), and the same terms should carry the same meaning throughout the Code.[3] The § 502(b) preamble limits allowance to "the amount of such claim as of the date of the filing of the petition[.]" That amount includes future rent, i.e., "rent reserved by such lease . . . following . . . the date of the filing of the petition," § 502(b)(6). Not only does "claim" include rights to payment that are "contingent" and "unmatured," but the § 502(b)(6) cap on future rent makes no sense unless future rent gets into the § 502(b) preamble in the first place.

Our case has a Lease executed in December, 2002, a Termination Fee paid in August, 2005, and a petition date in October, 2005. Putting the Termination Agreement aside for a moment, the "amount of [Midwest's] claim as of the date of the filing of the petition" would include future rent. The claim arose at the Lease's execution almost three years earlier.

---

3. <u>Bank of American National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership</u>, 526 U.S. 434, 451 (1999), citing *Cohen v. de la Cruz*, 523 U.S. 213, 219-220 (1998), applies the "commonsense rule that a given phrase is meant to carry a given concept in a single statute."

Now let us bring back the Termination Fee and substitute "debt" for "claim." Did not the "amount of such [debt] as of" the August, 2005 Termination Fee transfer date also arise from the December, 2002 Lease, and does it no also include future rent?

## I.  THE TRANSFER WAS MADE "ON ACCOUNT OF ANTECEDENT DEBT."

We apply normal rules of statutory construction as follows.[4]

### A.    "On Account of" means "Because of," not "In Exchange For."

Section 547(b)(2) contains two prepositional terms, not one. A qualifying transfer may be made "for" an antecedent debt, "or on account of" an antecedent debt. Implicit in Midwest's analysis is that the phrase "for or on account of" in § 547(b)(2) means "in exchange for." Midwest exchanged its right to a stream of rent payments in the future for a single payment, namely, the Termination Fee.

---

4.    Judge Massey recently restated our starting point as follows:

> To resolve a dispute over the meaning of a statute, a court first looks to the language of the statute itself. *United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989)*. Where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *Id.* (citing *Caminetti v. United States, 242 U.S. 470, 485, 61 L. Ed. 442, 37 S. Ct. 192 (1917))*.
>
> In deciding whether a section of a statute has a plain meaning, however, a court "'must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the whole law, and to its object and policy.'" *Offshore* [*86] *Logistics, Inc. v. Tallentire, 477 U.S. 207, 221, 91 L. Ed. 2d 174, 106 S. Ct. 2485 (1986)* [**10]  (quoting *Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 285, 100 L. Ed. 309, 76 S. Ct. 349 (1956)*, which quotes *United States v. Heirs of Boisdore, 49 U.S. 113, 8 How. 113, 122, 12 L. Ed. 1009 (1849))*.

In re Rhodes, Inc., 321 B.R. 80, 85-86  (Bankr. N.D. Ga. 2005).

The word "for" carries that concept. But the operative phrase contains two prepositions: both "for" and "on account of." Midwest give no additional meaning to "on account of." But the Supreme Court tells us we must.[5]

"On account of" means "because of." Bank of America National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership, 526 U.S. 434 (1999). There the Court interpreted "on account of" as they appear in § 1129(b)(2)(B)(ii). The Court reasoned as follows:

> "[B]ecause of" . . . is certainly the usage meant for the phrase at other places in the statute, see . . . § 547(b)(2) (authorizing trustee to avoid a transfer of an interest of the debtor in property "for or on account of an antecedent debt owed by the debtor"); § 547(c)(4)(B) (barring trustee from avoiding a transfer when a creditor gives new value to the debtor "on account of which new value the debtor did not make an otherwise unavoidable transfer to . . . such creditor").

526 U.S. at 450-1. Although those words may be *dicta* as to the definition of "on account of" in § 547(b)(2), we follow the Supreme Court's words even if *dicta*.[6]

## B.     "Debt" includes rights to payment that are "contingent, [or] unmatured[.]"

We noted in the Preliminary Statement that "debt" and "claim" are coextensive, and that "claim" is a "right to payment," whether "contingent" or "unmatured." §§ 101(5), (12). Those definitions matter to this case for these three reasons:

First, Midwest's discussion of Georgia law definitions of "debt" is off point. When Congress defines a word in statute, we employ Congress's definition.[7]

---

5.     We would otherwise "[offend] the well-settled rule that all parts of a statute, if possible, are to be given effect. " Am. Textile Mfrs. Inst. v. Donovan, 452 U.S. 490, 513 (1981) (citations omitted).

6.     Schwab v. Crosby, 451 F.3d 1308,1325 et seq. (11th Cir. 2006) (distinguishes weight to be given to Supreme Court *dicta*, as opposed lower court *dicta*, arising from the Art. III § 1 distinction of one supreme and other inferior courts).

Second, Midwest's analysis of "debt" in § 547(b)(2) gives no meaning to "contingent" or "unmatured." What can an "unmatured" right to payment be other than a right that awaits the passage of time to accrue?

Third, Midwest's resort to <u>In re Rhodes, Inc</u>., 321 B.R. 80 (Bankr. N.D. Ga. 2005) is misplaced. There Judge Massey addressed a different word, in a different section, that has different meaning. Judge Massey interpreted this: "[t]he trustee shall timely perform all the *obligations* of the debtor . . .". 11 U.S.C. § 365(d)(3) (emphasis added). And Judge Massey said this: "the undefined term 'obligations[]' . . . has to mean something less than a 'claim' as that term is defined in *11 U.S.C. § 101(5)*." 321 B.R. at 87.

### C.    The Termination Agreement Amply Shows "Antecedent Debt."

We now connect the statute to the document. The Termination Agreement provides at its second unnumbered page (bold in original):

> **IV.    Rent Payments and Termination Fee**. If Landlord receives the following payments from Tenant on or before the dates indicated below, then Landlord will waive all late charges, interest, and attorneys fees that have accrued under the Lease as of the date of this Agreement:
>
>> (a)    $15,215.00 [as rent for July and August – not at issue in this proceeding]; and
>>
>> (b)    $87,172.50 concurrently with Tenant's execution and delivery of this Agreement to Landlord, which payment shall constitute a Termination Fee. Except as expressly set forth in this Agreement, Tenant will not be further obligated to Landlord (nor shall Tenant be entitled to any credit) for any amounts pursuant to the Lease.

---

7.    When Congress wants to incorporate state law into its definitions, it says so. E.g., 11 U.S.C. § 547(e)(1) (defines "perfected" by reference to "applicable law").

The Agreement language quoted above shows two elements of "antecedent debt." First, in the preamble, Midwest waives "all late charges, interest and attorneys fees that have accrued" in direct exchange for one payment of $15.215 – not at issue here – and the Termination Fee of $87,172.50.  The document contains nothing that allocates those claims to subsection (a) alone.  Of course those claims constitute "antecedent debt."

Second, and the focus of these briefs, Termination Agreement Section IV(b) evidences "antecedent debt."  That section states, "Tenant will not be *further* obligated to Landlord . . . for any amounts pursuant to the Lease."  (Emphasis added.)  The parties recognized that the Lease – executed 32 months antecedent– created an obligation for the debtor, and a right to payment for Midwest.  The parties recognized that the debtor remained liable for those amounts.

In plain English, the debtor paid the Termination Fee "because of" Midwest's right to payment of future rent, even though, at the moment of transfer, Midwest's right to payment was perhaps "contingent," and was definitely "unmatured."

## II. "INCURRED" AND ITS THEORY HAVE NO PLACE IN THIS CASE.

"Incurred" does not appear either in § 547(b)(2) itself or in the definition of any word that does appear there.  Why then do Midwest, and the cases Midwest cites, interpret "incurred" at all?  And what relevance do those interpretations have for us?

The answers lie not in semantics or philology, but in history:  "incurred" appeared in the original 45 day cap on the "ordinary course of business" defense.  As enacted on November 6, 1978, and effective on October 1, 1979, the ordinary course of business exception said this:

> (c)  The trustee may not avoid under this section a transfer –
>
> (2) to the extent that such transfer was  --
>
> (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> **(B) made not later than 45 days after such debt was *incurred*;**
>
> (C) made in the ordinary course of business of financial affairs of the debtor and the transferee; and
>
> (D) made according to ordinary business terms.

Former 11 U.S.C. § 547(c)(2) (bold and italics added).

All agreed that "[s]ection 547(c)(2) is intended to protect recurring, customary trade transactions, but not one time payments in settlement of contractual claims."[8] And all recognized that timely lease payments, among other recurring and customary transactions, had never before been avoidable as preferences.[9] But written like that, § 547(c)(2)(B)'s 45 day rule blocked the "ordinary course of business" safe harbor. Even though the lease gave me 10 days to pay rent, and even though I made my rent payment religiously by the 10th of every month, I could not satisfy § 547(c)(2)(B) -- if the debt was "incurred" back when the lease was executed.

This problem was so major, so obvious, and so unintended, that in just five years the affected communities prevailed upon Congress to fix it. Congress repealed the 45 day rule in its

---

8.  The statement is that of <u>Durant's Retail Center, Inc. v. United Truck Leasing, Inc</u>. (<u>In re Durant's Rental Center, Inc</u>.), 116 B.R. 362, 365 (D. Conn. 1990), but the sentiment is universal.

9.  Historically, current rent payments were held to rest upon current consideration and therefore did not constitute preferences.  *In re Barrett, 6 Am. Bankr. Rep. 199 (S.D.N.Y. 1901); In re Lange, 97 F. 196 (S.D.N.Y. 1899); In re Louis J. Bergdoll Motor Co., 225 F. 87 (E.D. Pa. 1915).*

<u>Sapir v. Eli Haddad Corp</u>. (<u>In re Coco</u>), 67 B.R. 365, 370 (S.D.N.Y. 1986).

entirety in 1984.[10] Lessors were now protected, as they had been before 1979. Debate could still be heard concerning long term lending, so seven years later the Supreme Court spoke. Union Bank v. Wolas, 502 U.S. 151 (1991), held that §547(c)(2), now shorn of any 45 day cap, grants safe harbor to ordinary repayments of long term debt.

What does all this have to do with Midwest's "incurred" theory? Before Congress and the Supreme Court fixed the 45 day rule problem, the lower courts and commentators tried to do so in a different way. Their method did not work as well, and in any event was made obsolete by the 1984 amendment and the 1991 Wolas case. It is their method that Midwest raises today.

The early cases that Midwest cites are Carmack v. Zell (In re Mindy's, Inc.), 17 B.R. 177 (Bankr. S.D. Ohio 1982), Iowa Premium Service Co., Inc. v. First National Bank (In re Iowa Premium Service Co., Inc.), 695 F.2d 1109 (8th Cir. 1982), Armstrong v. General Growth Development Corp. (In re Clothes, Inc.), 35 B.R. 489 (Bankr. D. N.D. 1983), and Bernstein v. RJL Leasing (In re White River Corporation), 799 F.2d 631 (10th Cir. 1986). All they tried to do was to fix the problem caused by former § 547(c)(2)(B).[11]

---

10. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-353, § 462(c), 98 Stat. 378, struck § 547(c)(2)(B), and moved the third and fourth requirements up one letter, to bring § 547(c)(2) to its present form.

11. For example, the Mindy's court concluded with this:

> The present situation is not one where a rental obligation has been permitted to accrue over a period of months and where a lump sum payment may have been made shortly before the filing of a bankruptcy petition. In such an instance it would appear that the exception contained in § 547(c)(2) would not apply, and the application of such payment to substantially overdue rental obligations would constitute a preference, assuming all other elements of preference would exist. However, because of the forty-five (45) day "ordinary course of business" exception to preference recovery contained in *§ 547(c)(2) of*

In their zeal to fix the Code, however, some writers engaged in overkill: they tinkered not only with former § 547(c)(2)(B), but with our statute, § 547(b)(2), as well.  For example, in 1987, one commentator stated as gospel, "a debtor's monthly rent payment, if remitted on the day the monthly rent first becomes due and payable, is not a preference *because it is not made in respect of antecedent debt*."  M. Bienenstock, Bankruptcy Reorganization at 369 n.59 (1987), quoted in Child World, Inc. v. Service Merchandise Co. (In re Child World, Inc.) 173 B.R. 473, 477 (S.D.N.Y. 1994) (emphasis added).[12]

Remarks like that give rise to Midwest's argument here.  We ask this court to reject it for four reasons.

First, as noted above, the "incurred" theory arose for an historical reason that has long since passed.

Second, the "incurred" theory never reached acceptance as an interpretation of our provision, § (b)(2) – perhaps because the word "incurred" does not appear in § (b)(2).  For example, the Midwest April 6 Brief at p. 5 cites Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F. 3d 323 (8th

---

> *the Bankruptcy Code*, and the apparently undisputed fact that the rent obligations were incurred and that the rent payments were made by the debtor in the ordinary course of its and the lessor's businesses, and according to ordinary business terms as they existed between the lessor and lessee, the trustee's recovery of these payments must be denied.

17 B.R. at 180.

12.    As another example, a bankruptcy court in 1994 deemed it "well settled that the *obligation* to pay rent is deemed to arise on the due dates provided in the lease and not when the lease is signed.  In re Child World, Inc., 173 B.R. at 477 (emphasis added; citations omitted).  However, we might join Judge Massey, supra, in concluding that "obligation" is not coextensive with "claim," even though "debt" in § 547(b)(2) is coextensive with "debt."

Cir. 1997), for the proposition that "[a] debt is not antecedent unless it was 'incurred' before the allegedly preferential payment."  But the Jones Truck Line court expressly declined to rule on that point.  The court properly states at p. 330, "Because Central States prevails under the § 547(c)(1) exception, we will leave the antecedent debt question [of § 547(b)(2)] unresolved."  Another example is the latest "antecedent debt" case that Midwest cites, Hays v. DMAC Investments, Inc. (In re RDM Sports Group, Inc.), 250 B.R. 805 (Bankr. N.D. Ga. 2000), Judge Drake does state Midwest's "incurred" theory, but only in *dicta*.  He held that, however strict the definition of "antecedent debt" in § 547(b)(2), the trustee had satisfied that requirement through obligations that had already been "incurred" under anybody's definition.

Third, we follow cases not for what they *say*, but for what they *do*.  (Supreme Court cases are an exception; see note 6 above.)  No case that either party has found protects a transfer that, like ours here, was outside the ordinary course of business.  To the contrary, they all protect transfers that were made within the ordinary course of business.  And only one case addresses our facts: a one time payment in exchange for release of obligations to make future payments.  That case is Upstairs Gallery, Inc. v. Macklowe West Development Co., L.P. (In re Upstairs Gallery Inc.), 167 B.R. 915 (B.A.P. 9th Cir. 1994).  It says that its termination fee is avoidable.

Finally, the "incurred" theory employs suspect methodology.  It antedates the Supreme Court's admonitions from 1989 on how to interpret statute.[13]  We find no "incurred" theory case that addresses the language of § 547(b)(2) itself as we did in Section I above, i.e., by applying the Bankruptcy Code definitions of "on account of," "debt" and "claim."  We find no such case

---

13.    United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989).  See note 4 above.

that addresses the inconsistency between "unmatured" in § 101(5) and "incurred" as the theory uses it.  And we find no such case that addresses the inconsistency between the "incurred" theory as it relates to § 547(b)(2), and the preamble of § 502(b) (prepetition claim for postpetition rent; see p. 3 above).  If the "incurred" theory were universally accepted to have done the job that it was intended to do, then Congress would not have needed to repeal former § (c)(2)(B) at all.

In short, we are 28 years from the emergence of an unintended statutory problem: transactions that were concededly within the ordinary course of business were denied a safe harbor from preference avoidance.  We are 23 years from Congress's solution (strike the offending limitation on the ordinary course of business defense).  We are 18 years from the Supreme Court's disapproval of the methodology of statutory interpretation that the "incurred" theory courts used.  And we are 16 years from the Supreme Court's completion of the solution to the original statutory problem (interpret the amended § 547(c)(2) as originally intended).

Midwest now asks this court to resurrect the "incurred" theory.  And Midwest asks this court to employ that theory directly *against* its intended purpose – not "to protect recurring, customary trade transactions," but to save a "one time payment[] in settlement of contractual claims."  Durant's, supra, 116 B.R. at 365.

No court that we can find has accepted an invitation like that in these past 28 years.  We suggest that this court decline it as well.

<u>Conclusion</u>

The Trustee's summary judgment motion should be granted, and Midwest's summary judgment motion should be denied.

Dated: April 16, 2007
       Atlanta, Georgia

<u>/s/Bill Rothschild</u>
William L. Rothschild
Georgia Bar No. 616150

Ellenberg, Ogier, Rothschild and Rosenfeld, P.C.
170 Mitchell Street, S.W.
Atlanta, GA 30303-3424
404 525 4000

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2007, I served a copy of the document to which this certificate is attached by causing a copy to be deposited in the United States mail, postage prepaid, to the following:

Mark A. Kelley
KITCHENS KELLEY GAYNES, P.C.
Building 11, Suite 900
Piedmont Center
3495 Piedmont Road, N.E.
Atlanta, Georgia 30305

<u>s/Bill Rothschild</u>